The opinion of the court was delivered by
White, J.
-The plaintiff leased a plantation to James Crow ; during the exist,onei of the lease Schmidt & Zeigler, judgment creditors of Crow, seized under execution t,he crop and certain other movables on the leased premises. The lessor enjoined: tho'defendant excepted no-cause of action, which being maintained, plaintiff appealed.
The theory upon which the petition for injunction was drawn is, that any seizure of movables stricken with the landlord’s privilege pledge and right of detent;, sii is a violation of the landlord’s legal, rights; and that, oven although such be not the case, a growing crop being an immovable can not bo seized separately from the soil. The correctness of these positions is the matter presented for solution, which may be thus stated :
1. Dees the right of pledge given the lessor by C. C. 2705, and the power of detention accorded by C. C. 3218, render illegal a seizure of movables stricken with them ? Or, in other wórds, does the authority granted by law to the lessor to take the effects themselves and keep them until he is paid prevent creditors from provoking a sale by which the things subject to detention can be converted into money, and the rights of creditors, if any, be exercised on the surplus, above the claim of the lessor?
2. Can a growing crop belonging to a lessee be seized ?
We will consider the questions separately.
First. This question is not a new one in our jurisprudence. Tanner, administrator, vs. Tanner, 6 R. 35; Robb vs. Wagener, 5 A. 112; Aurick vs. Boisseau, 23 A. 605 ; Case, Receiver, vs. Kloppenburg, 27 A. 483. But while our reports are thus replete with cases wherein the matter has been discussed or directly passed on, the adjudications, instead of facilitating the decision of the case now presented, render it *871 more difficult, because of the irreconcilable difference which exists between the opinions expressed.
In Tanner, administrator, vs. Tanner, 6 Rob. 35, although the question of the right of detention does not seem to have been directly presented, the court said: “ The right of detention which is a part of the lessor’s remedy, affords him, to be sure, much greater security, but, like the pledgee and the crelitor, having only a privilege, he must have the-thing subject to his lien sold in the manner provided by law. When this takes place, if a conflict should arise in consequence of adverse claims on the same fund, a distribution of it must be made.”
In Robb vs. Wagener, 5 A. 112, without any reference to the previous case, and without citation of authority, the court, in perpetuating an injunction taken by a lessor, laconically said : “ No sheriff or United States marshal has the right, on an execution in favor of a third person, of taking away property on which the landlord has a privilege for rent and selling the same, pending an injunction taken out by the landlord, without paying the rent. * * When property on which a landlord has a privilege for rent has been seized on execution at the suit of a third person, the landlord has two remedies, either by way of a third opposition or by injunction.”
In the Boisseau case, by an obiter the same doctrine was seemingly recognized ; and, finally, in Case, Receiver, vs. Kloppenburg the foregoing cases were reviewed and the right of the lessor to enjoin pointedly denied; the court holding that the right of detention was no obstacle to a seizure and sale by creditors, in order that the claims of all might be paid by the distribution of the fund. The conclusion was not unanimous, two members of the court dissenting, the majority placing their decree on the inconvenience and incongruity to result from, a different view; the minority admitting both the great,inconvenience and denial of justice flowing from their conclusion, but resting their dissent on the maxim, ita lex scripta est. Thus, we have the right to seize supported by the first case in our reports, where the matter was considered, sustained by the last wherein the subject was elaborately discussed; the one being weakened by the fact that what was said was obiter, the other> in consequence of the division of the court, and because the conclusion was supported only by arguments of inconvenience. On the other hand, the paramount nature of the pledge and detention is sustained by two cases, one obiter the other, seemingly not well considered.
We are, therefore, compelled to approach the examination of the subject if not as res integra, at least as one wherein our conclusions must be predicated upon and justified by the reasons leading to them, without solely relying on the previous opinions expressed by this court. It is obvious on the very threshold of the inquiry that the reasons of *872 inconvenience which were cogently expressed in the Kloppenburg ease present the issue strongly in favor of that construction which recognizes the right to seize. To hold that it does not exist will be a denial of right to the creditor, will be enabling a lessor, whose power of detention is only an accessory, to secure the sum. due and to become due, to shield property largely in excess of the amount of his claim: thus creating in óur system a contract destructive of the rights of others, and, also, subversive of the general principles by which the enforcement of obligations under our law is guaranteed; which are, that the property of a debtor is the common pledge of his creditors; that a right in one creditor to be paid from the proceeds of a certain thing does not prevent courts of justice, at the instance of other creditors having rights to be paid from the same thing, from directing a sale so that the claims of all may be classed, and the proceeds distributed to whom of right. That these inconveniences must necessarily flow from holding that the power of detention excludes the right to seize seems self-evident; for if the right does not exist no other remedy can be invoked by the creditor, although the lessor might detain twenty times the value of his claim.
It was suggested in argument that garnishment of the lessor would be a proper remedy, but, manifestly, such process would be futile if the power does not exist to direct the sale of the property and distribution of the proceeds: nor do we think the argumentum ab inconvenienti lessened by the suggestion that the creditor by paying the lessor could avail himself of the remedy of seizure; non constat, that he could pay, and even could he, the injustice of so compelling is manifest. The weight of these views is augmented by the consideration that no right of the lessor is impaired by a recognition of the right to seize, for the object-of his accessory right of detention is payment, a payment which the seizure and sale accomplishes, with the rank allowed by law. Serious as these reasons may be, they ought not to control our decision if the text of the law be clear and unequivocal to the contrary. Is such the case ? “ The lessor has for the payment of his rent and other obligations of the lease a right of pledge on the movable effects of the • lessee which are found on the leased premises.” C. C. 2705. ■ “ The right which the lessor has over the products of the estate and on the movables which are found on the place leased for his rent is of a higher nature than mere privilege; the latter is only enforced on the price arising from the sale of the movables to which it applies. It does not enable the creditor to take or keep the effects themselves, specially. The lessor, on the contrary, may take the effects themselves, and retain them until he is paid.” C. O. 3218.
Now, it is clear that the right of detention until paid ■ is given as against the lessee, upon whom the obligation to pay rests, but it is far *873 from certain, taking the text alone as a guide, that one who has an interest in the thing detained, and upon whom no duty of paying rests, may not take steps to bring about payment by the realization and attribution of the proceeds. That the expression of the right to detain in favor of the lessor was not intended by the compilers to import it as to creditors can be easily inferred from C. C. 3225, which, while it gives one who has furnished material or incurred expenses for the preservation of a thing the right of detention until payment, also, in express terms declares that the right shall exist as to creditors; thereby, under the rule of inclusio unius est, excluding it in the case of the lessor. However, all doubt as to the nature and extent of the lessor’s right of detention is removed on reading the text of C. C. 3218 by the light of the civil law, of which it forms a part, and from the sources of which the right of detention has been derived.
In the Boman law, the right of the lessor to be paid from the movables of the lessee was recognized at an early day. L. 4 D.: “ In quibus causis.” Troplong du Nantissement, p. 16, no 12: Pothier, Contrat de Louage, no. 226. “We ordain,” (says Justinian) “ that the movables of the lessee shall be tacitly obliged to the proprietor for the payment of the rent.” Code, “ In quibus causis pignus vel hypotheca taciti contrahitur.” The pignus of the Boman law imported a right of detention superior to that given the pledgee under our system. L. 40, sec. 2, Digest de pignerat actio. Though such was the case, and the debtor, therefore, could not take back the things stricken without previous payment of all sums due, the like rule did not apply to creditors seeking to enforce their rights. Code, L. 27, no. 1, et seq. Etiam, ob chirographariam. Troplong, in commenting on this distinction, concludes that although the pledgee was obliged to sell the thiDgs stricken with his rights in order to obtain payment, yet courts would not allow the defaulting pledgor to compel the sale, his duty being to pay, yet that such was not the case with creditors of the pledgor upon whom the obligation of payment did not devolve. Du Nantissement, p. 414, no. 453.
In the ancient law of France, in all the provinces, a right similar to the Boman-law pignus, or one designated by Pothier as “ a species of pledge,” was recognized as securing the lessor’s rights. “ Les grains et biens meubles d’un fercnier et locataire sont taisiblement obliges pour les maisons et loyers du propriétaire,” is the language of Loysel, Laporte Pandects Frangaise, vol. 13. p. 189, and authorities by him quoted ; Dumoulin sur Paris, art. 171; Pothier, Contrat de Louage, nos. 228, 229 : Domat (Remy’s edition, vol. 2, p. 39), book 3, tit. 1, sec. 5, no. 12. Under this state of law Domat says :
“Whatever may be the lessor’s privilege on the movables of the essee for what may be due under the lease, he has not the right to pre *874 vent the sale of the movables, although such sale may injure the continuation of the lease; he can exercise his privilege on the price of the movables.” Domat, book 3, tit. 1, sec. 5, no. 12; Remy’s edition, vol. 2, p. 39. The same views are attributed by Troplong to Cujas. Troplong du Nantissement, no. 465, p. 426.
Although in the Code Napoleon the quasi pledge of the lessor is not in terms expressed, it was considered by the compilers as inherent in the lease and tacitly resulting from it. Laporte Pandects Frangaise, vol. 15, p. 188, and authorities there cited. The subsequent legislation of France rests on this theory, for the remedy created for the enforcement of the lessor’s claims is designated as “ saisie gagerie,” or pledge seizure. Code de Procedure Civil, art. 819.
Now, under this system, identical with our own, the courts of France at an early day held that the rights of the lessor were no obstacle to a seizure and sale, the result of which would bring about a distribution,. Enregistrement c. Gastry, Cassation, August 14, 1814, Journal du Palais for 1814, p. 366. The writers on the Code Napoleon, or the greater number, teach the same doctrine, resting it on the ground that the right of detention, whether resulting from the implied pledge of the lessor, or from the actual conventional pledge, is a righ.t between the parties, and not, therefore, .efficacious erga omnes. In fact, they view the right of detention as one not given to protect the pledgee from third parties, but from the pledgor. The principle is thus tersely stated by Troplong :
“ The privilege is the right of the creditor as against third persons, adversus creditores exteriores. The right of detention, on the contrary, is an exception between the creditor and debtor.” Troplong du Nantissement, no. 455, et seq.
“Le locateur,” says Zacharige, “n’a du reste en aucun cas le droit de s’opposer a la saisi et a la vente des objets soumis a son privilege lorsquelle sont poursuivies par d’autre créanciers.” Zacharite, vol. p. 110. “Dans le cas special du nantissement mobilier le droit de retention conferé au gagiste est purement personel et n’a d’action ou d’effet que dans les rapports du créancier au debiteur.” Paul Pont’s Petits Contrats, vol. 2, p. 658, no. 1184. He adds: “ Par cela méme qu’il est purement personel, dans l’hypothese special du gage, le droit de retention laisse aux autres créanciers du debiteur la faculté de saisir la chose donnóe en nantissement et de la faire vendre sans teñir compte de la possession du gagiste et sans avoir a le désiutéresser. Le droit de ce dernier * * * se resume tout entier nous venons de le dire dans le privilege qui lui assure un rang preferable sur le prix. * * * Ibid., vol. 2, no. 1185 ; Duranton, vol. 19, p. 131, no. 95.
These opinions and the examination which we have made lead but to one conclusion; which is, that the right of detention is no obstacle to *875 the seizure by a creditor. To hold the contrary, would, as we have-seen, be contrary to the principle which took its being in the Roman law, whence the right of detention came, and has followed it in all its transmutations. The compilers of our Code did not in creating-the right of detention do more than express a right known and applied wherever the wise principles of the civil law prevailed.
The text of our article seems to have been drawn from the Partidas, which, in speaking of the lessor’s rights, uses language almost identical with that used by our Code; saying, “he can retain them as for pledges, until the latter shall pay him the rent.” * * * Part. 5, Law 5, tit. 8. Lopez in his commentary refers this provision to the Roman Law; and Febrero, in his treatise, speaks of the lessor’s right as a simple preference when urged against creditors : Upon them”' (the movables) “ he is preferred to all the creditors of the lessee, of whatever rank ; ” thus indicating the right to distribution as the method by which the preference is to be obtained.
There-is another view which is equally decisive ; the text leaves no doubt that the lessor’s right to detain is the consequence of his implied pledge; now, the detention resulting from the conventional pledge, by C. C. 3161, which is equivalent to that given the lessor, has long since-been held, in accordance with the views we have above expressed, not to enable the pledgee to retain, as against creditors who seek by sale to compel the realization and distribution of the proceeds of the thing-pledged, 2 N. S. 22; 1 N. S. 417 ; 13 La. 341; Ange vs. Variol, just decided. I£ the conventional pledge and actual detention has been so-construed, a fortiori, a like conclusion is necessary where the right of pledge is simply a legal fiction.
We conclude, then, to adhere to the rule as laid down by our predecessors in Case, Receiver, vs. Kloppenburg, and, inconsequence, we do not think the lessor’s right of detention was violated by the seizure.
2. This branch of the case is disposed of by the case of Citizen’s Bank vs. Wiltz, 31 A. 245. The crop of the lessee was his, and although,, abstractly speaking, it may have been an immovable viewed from the-lessee’s point of view, it was a movable, or, at all events, an apparent-immovable mobilized by anticipation.
The judgment is.affirmed with costs.